**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | ) |
| | ) |
| **v.** | ) |
| | )    **Criminal No. 14-10319-DJC** |
| | ) |
| **CHRISTOPHER HENRY,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                       **January 6, 2020**

## I.  Introduction

Petitioner Christopher Henry ("Henry") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 (the "Petition"), alleging ineffective assistance of counsel (Grounds 1, 2 and 3) and that the vacatur of a prior state drug conviction as a result of Annie Dookhan's misconduct at the Hinton Drug Lab warrants relief as to his trial and sentencing (Grounds 4 and 5). D. 173. The government opposes the Petition. D. 186. For the reasons discussed below, the Court DENIES the Petition.

## II.  Standard of Review

A petitioner may seek post-conviction relief under § 2255 if his sentence "(1) was imposed in violation of the Constitution; (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). It is the petitioner's burden to make out a claim for such relief. Id.

1

## III.    Procedural History

On July 27, 2015, after a jury trial, Henry was acquitted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), but was found guilty of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1).  D. 125.  On November 16, 2015, the Court sentenced him on the sole count of his conviction to 51 months' imprisonment to be followed by four years supervised release.  D. 135, 136.  Henry filed a timely notice of appeal.  D. 137.  On January 18, 2017, the First Circuit affirmed his conviction.  D. 154.  Henry appealed to the Supreme Court on April 19, 2017.  D. 159.  The Supreme Court denied his petition for a writ of certiorari on June 5, 2017.  D. 160.  Henry has now timely filed the Petition.  D. 173.

## IV.    Grounds for Relief

Henry contends that his sentence was imposed in violation of the Constitution based on several grounds:  (1) his trial counsel's failure to argue that the good faith exception to the exclusionary rule should not apply to potential suppression of information from Henry's cell phone constituted ineffective assistance of counsel; (2) his appellate counsel's failure to raise the good faith exception argument on appeal and the resulting waiver of the issue constituted ineffective assistance of counsel; (3) his trial counsel's failure to preserve an objection to the Court's decision not to give the jury a lesser-included instruction on simple possession constitutes ineffective assistance of counsel; (4) the subsequent vacatur of Henry's prior state drug conviction means that the prior conviction should not have been admitted at trial; (5) this vacatur of Henry's prior state drug conviction also warrants resentencing.  D. 173 at 4-12.

## V.     Discussion

### A.     Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a petitioner must show that: "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.'"  United States v. Constant, 814 F.3d 570, 578 (1st Cir. 2016) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).

Reasonableness is viewed "as of the time of counsel's conduct."  Strickland, 466 U.S. at 690.  Judicial scrutiny of a counsel's representation and performance must be "highly deferential" and the Court should make "every effort . . . to eliminate the distorting effects of hindsight."  Bell v. Cone, 535 U.S. 685, 698 (2002) (internal quotation marks omitted).

To demonstrate prejudice, Henry must show "that there is a reasonable probability" that, but for the attorney's deficient performance, there would have been a different outcome.  Strickland, 466 U.S. at 694.  A "reasonable probability is one 'sufficient to undermine confidence in the outcome.'"  Johnston v. Mitchell, 871 F.3d 52, 64 (1st Cir. 2017) (quoting González-Soberal v. United States, 224 F.3d 273, 278 (1st Cir. 2001)).  When this claim is raised as to potential sentencing prejudice, the defendant must demonstrate that "absent the [counsel's] errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant" the sentence.  United States v. Sampson, 820 F. Supp. 2d 202, 220 (D. Mass. 2011).

Since the Court concludes that Henry is unable to satisfy this burden as to each of his claims of ineffectiveness, these claims fail.

### 1.     Ineffective Assistance with Respect to Suppression Issues

Henry's first two grounds for habeas relief focus on his efforts to suppress evidence from law enforcement's search of his cell phone pursuant to a search warrant, first at the pretrial stage and then on appeal to the First Circuit. After a hearing on the motion, D. 64, 69, this Court ruled that the evidence should not be suppressed because the search warrant was supported by probable cause and that, in the alternative, law enforcement's reliance on the warrant was in good faith, citing exception to the exclusionary rule under United States v. Leon, 468 U.S. 897, 922 (1984). D. 111 at 5-6. Henry contends that his counsel failed to properly brief the Court on the inapplicability of the good faith exception to the exclusionary rule. "[I]n order to demonstrate actual prejudice in such a case, the petitioner must show that both 'his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.'" Jimenez v. Spencer, No. CIV.A.07-12242-DPW, 2009 WL 2145803, at *4 (D. Mass. July 14, 2009) (citing Kimmelman, 477 U.S. at 375). Here, even assuming *arguendo* that any failure to argue against the application of the Leon good faith exception was unreasonable, Henry cannot show that the suppression motion would have been decided differently if his counsel had made this argument. In ruling on the suppression motion, the Court rejected the very contention that Henry raises now noting that "[e]ven if the search warrant was struck for lack of probable cause, exclusion of the evidence seized would not be warranted under the good faith exception to the exclusionary rule." D. 111 at 6. Accordingly, Henry has not shown that there was a reasonable probability that but for his trial counsel's alleged failure to raise this issue, there would have been a different outcome as to the denial of his suppression motion.

Henry's claim of ineffective assistance of counsel as to his appellate counsel's failure to raise the same issue on appeal meets the same fate as he is similarly unable to show actual prejudice

as a result of any ineffective assistance. Henry certainly has a stronger argument that his appellate counsel's failure to challenge the district court' alternative basis for denying his motion to suppress under the <u>Leon</u> good faith exception. As the First Circuit ruled, "[b]y failing to address the good-faith exception in his opening brief, Henry waived any argument that it is inapplicable in his case." D. 154 at 8. While appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal," <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000), here, Henry's counsel's failure to include the good faith exception argument foreclosed any appellate review of this Court's motion to suppress decision. D. 154.

Even if his appellate counsel's conduct in this regard was unreasonable, <u>see</u> D. 196-2 at 1 (affidavit indicating counsel's "mistake" in failing to raise the good faith exception argument in Henry's opening appellate brief), Henry has still failed to show actual prejudice from such conduct. Had Henry's counsel properly presented the motion to suppress issues to the First Circuit, the appellate court would have "appl[ied] a mixed standard of review to the district court's denial of a motion to suppress, reviewing findings of fact for clear error and conclusions of law, including whether a particular set of facts constitutes probable cause, de novo." <u>United States v. Belton</u>, 520 F.3d 80, 82 (1st Cir. 2008) (citing <u>United States v. Dickerson</u>, 514 F.3d 60, 65–66 (1st Cir. 2008)). To succeed on appeal, Henry would have to show that the First Circuit would have found "no reasonable view of the evidence support[ed] the denial of the motion to suppress." <u>Id.</u> (citing <u>United States v. Materas</u>, 483 F.3d 27, 32 (1st Cir.2007)). On this record, Henry has not made this showing. There was more than ample probable cause for the issuance of the search warrant of Henry's cell phone. D. 11 at 5-6. In issuing the search warrant, the state court magistrate relied upon affidavit of Boston Police Detective Anthony Williams. D. 186-1 at 1-10. In relevant part,

the affiant related the events of May 29, 2014 that led to the arrest of Henry and provided a substantial basis for the magistrate to believe that there was probable cause that the phone would contain evidence of Henry's crime, particularly the drug distribution offense.  D. 111 at 5 (citing Williams' affidavit).  BPD Officers Butler and Conley were patrolling in the area of a memorial of the anniversary of the murder of a Thetford Avenue Associate gang member.  Id. at 4.  While patrolling, Officer Conley observed Henry express what appeared to be surprise at the officers' presence and then soon thereafter flee on foot.  Id. at 2.  Upon pursuit by police and arrest, Henry was transported to the police station for booking.  D. 186-1 at 5.  En route, an officer observed Henry tried to manipulate his front left pants pocket.  Id.  During booking, an officer recovered two plastic bags from Henry's person, each of which contained individually wrapped plastic bags of a substance belied to be crack cocaine and which field tested to be this controlled substance.  Id.  Henry was also in possession of $830.00 in cash and a cell phone, id. at 5-6, which was the subject of the search warrant.  Id. at 8.  In addition to the circumstances as to Henry's arrest and the search of his person, Williams, a 20-year veteran of the BPD who had participated in over 100 arrests and investigations for firearm violations and controlled substance offenses, id. at 3, attested that, among other things, cell phones "are often used to locate an individual who wishes to purchase illegal drugs or a co-conspirator involved in the transaction of illegal drugs," "provide investigators with a history of an individual's location before, during, and after a crime were two or more people may be together to plan out the crime" and "person(s) frequently use electronic communication devices, to include cellular telephones, to communicate the date, time, size, location and nature of the illegal transfer of either money or drugs."  Id. at 7, 8.  As this Court properly concluded, "[a]ll of the[se] facts and circumstances provided a substantial basis for probable cause for the search warrant" of Henry's cell phone.  Id. at 111.  There was both evidence of the "commission" element

for such probable cause showing—i.e., that the officers had probable cause to believe that Henry had engaged in possession with intent to distribute crack cocaine—and the "nexus" element (i.e., that evidence of such crime would be found on Henry's cell phone).

As this Court noted, even if there had not been a showing of probable cause to support the search warrant of Henry's phone, suppression of evidence of same was still not warranted under Leon.  Under Leon, 468 U.S. at 897, suppression of evidence seized pursuant to a search warrant is not warranted unless the magistrate was misled by information that the affiant knew was false or offered with reckless disregard for its truth; "the issuing magistrate wholly abandoned his judicial role"; the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or the warrant was "so facially deficient— i.e., in failing to particularize the place to be searched or things to be seized—that the executing officers [could not] reasonably presume it to be valid." Id. at 914, 923.  Although the record does not reveal a basis for concluding that any of these exclusions to the Leon good faith exception apply, since Henry focuses his argument on the third exclusion, that the affidavit was so lacking in probable cause as to render official belief in its existence entirely unreasonable, D. 196 at 8, the Court shall focus its analysis on this contention.

To conclude, as Henry argues this Court should, that the "warrant provided no reason to believe that evidence of any crime would be found on Henry's phone," id., this Court would have to ignore the totality of circumstances about Henry's arrest and search and the detective's professional opinion about the use of cell phones, both of which the magistrate was entitled to consider and credit.  Whatever may have caused the officers to be on patrol in the area when they encountered Henry (a memorial for the anniversary of the murder of a gang member), the facts and circumstances of that encounter—Henry's apparent surprise at the appearance of the police,

his flight soon after, furtive motions in the backseat of the cruiser with his pants pocket and the search of his person that revealed not just individualized baggies of crack cocaine, but a large sum of cash in small bill and a cell phone, provided sufficient probable cause to believe that Henry had committed the crime of possession of crack cocaine with intent to distribute. But such information, coupled with the detective's further attestations about the tools of trade of drug distribution, also provided the nexus that there was probable cause to believe that his cell phone would contain evidence of drug dealing. Based upon his training and experience, the detective attested that "it is common practice for victim's/suspects of . . . drug sales incidents to make phone calls or text messages immediately before and after the act discussing the incident or transaction with their co-conspirators," may provide information about the person's location before, during and after a crime, information about the planning of same or even photographic evidence relating to same. D. 186-1 at 6, 8. It is well settled that an issuing magistrate may rely upon an officer's training and experience in making a probable cause determination. United States v. Rivera, 825 F.3d 59, 66 (1st Cir. 2016). Here, such training and experience was only part of the facts and circumstances on which the magistrate reasonably could rely, as the totality of the circumstances related in the affidavit provided more than ample probable cause for the search warrant for Henry's phone. Accordingly, this Court does not agree that the affidavit was so lacking in probable cause as to render official belief in its existence entirely unreasonable, D. 196 at 8.

The search warrant was supported by probable cause or, in the alternative, the good faith exception under Leon with respect to the contents of Henry's cell phone. D. 111 at 5-6. Henry's counsel's failure to raise and preserve the latter argument did not result in any prejudice to Henry.

2.     *Ineffective Assistance with Respect to Simple Possession Instruction*

Henry's final ineffective assistance claim is based upon his trial attorney's failure to preserve an objection to the Court declining to instruct the jury on a simple possession charge. Again, even assuming ineffective assistance from Henry's counsel's failure to object to the jury instructions and thereby waiving the issue for appeal, there was no prejudice to Henry from such failure. The Court noted during the trial that it would not "be rational here for the factfinder, the jury, to convict on the lesser included . . . and not possession with intent to distribute." D. 149 at 4. Moreover, Henry's theory of defense was not that the individually wrapped baggies of crack cocaine were for personal use, but that they had been planted by police. Tr. 7/24/15 at 40-43. On this record, Henry has failed to show that but for his counsel's alleged failure to pursue this matter, the outcome, namely his conviction. The First Circuit's analysis of whether it should apply plain error review in his direct appeal is particularly apt when it explained that Henry:

> fail[ed] to present a persuasive argument that the jury might have acquitted him of the possession with intent to distribute charge if it had been instructed on the lesser included offense of simple possession given that: the record contains no affirmative evidence that Henry possessed the drugs for personal use; Henry's intent to distribute was minimally contested and nearly conceded at trial; the quantity of drugs Henry carried was consistent with an intent to distribute; Henry was carrying a large amount of cash denominated at the street purchase price for crack cocaine; and Henry's text messages suggested that he was a dealer of drugs rather than a mere user.

D. 154 at 25. Having failed to show actual prejudice under Strickland, this third ground for habeas relief also fails.

**B.  Introduction of Rule 404(b) Evidence at Trial**

At trial, the Court allowed the government, over a defense objection, to introduce evidence of Henry's prior drug dealing on March 25, 2011 and resulting 2012 state court conviction for same under Fed. R. 404(b). As the government argued, and the Court concluded, such evidence was admissible for showing the requisite intent to distribute and modus operandi and did not run

afoul of Fed. R. Evid. 403. Tr. 7/20/15 at 5-6. The Court made this ruling before trial began and indicated that it would give the jury a limiting instruction, which it later gave the jury when the government introduced the evidence during trial. Tr. 7/23/15 at 51-52. At trial, Boston Police Department Sergeant Detective John Fitzgerald, who had been the arresting officer in that instance, testified about going to the residence, encountering Henry and finding in his pants (identified as Henry's), along with $768.10 in cash and marijuana, three baggies of crack cocaine and later in the shorts Henry was wearing, eleven baggies of crack cocaine and a larger rock of crack cocaine. Tr. 7/23/15 at 52-57. The officer testified that Henry was charged with possession of a Class B substance with intent to distribute and that he pled guilty to the charge. Id. at 57; Tr. Exh. 35 (certified copy of the conviction). In its closing argument, the government argued that Henry "possessed [the crack cocaine] in the same manner inside his shorts that he did in 2011" and the crack cocaine in his shorts on this prior occasion bears upon his intent to distribute in his case: "[w]hat does that tell you about the crack in his shorts on this occasion? He intended to distribute that as well." Tr. 7/24/15 at 19.

On direct appeal, the First Circuit concluded that "the district court did not abuse its discretion in ruling that the prior-conviction evidence qualified under the intent exception to Rule 404(b)." D. 154 at 13. Although the appellate court encouraged district courts to assess the "special relevance" of any such proffered evidence and engage in the Rule 403 balancing of probative value and prejudicial effect, here, it concluded that "although Henry did not make the absence of an intent to distribute the centerpiece of his defense, he did raise the issue by seeking a lesser included offense instruction for simple possession." Id. at 14. Accordingly, the government was entitled to offer all evidence regarding such intent, including the prior conviction and any risk

of the jury drawing an impermissible inference of propensity was addressed by the Court's limiting instruction.  Id. at 14-15.

Now, in the Petition, Henry seeks to upend his conviction and his sentencing because that that 2012 state conviction was vacated.  Bridgeman v. District Attorney for Suffolk County, 476 Mass. 298 (2017) (addressing misconduct by chemist Annie Dookhan in the state lab); D. 196 at 17-20.  Although any suggestion that the Court should treat the introduction of his prior 2012 state conviction at his trial differently from the instances in which habeas petitions have been denied for defendants seeking to vacating convictions to which they had pled after the disclosure of Dookhan misconduct, see D. 186 at 33 (citing cases) has some initial appeal (and prompted the Court to hear oral argument on this ground in the Petition, D. 198), it does not warrant habeas relief that Henry seeks any more than those cases did.

In cases in which a defendant has sought to vacate his conviction for Dookhan misconduct, courts have applied the two-part test under Ferrara v. United States, 456 F.3d 278, 289 (1st Cir. 2006:  first, the showing of "egregiously impermissible conduct" by the government before the defendant's entry of the plea; and second, the petitioner must "show that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice."  Id. at 290.  "Judges of this court, faced with the claims arising from Ms. Dookhan's misconduct have similarly declined to opine on the first prong and, instead, have addressed, and disposed of, claims by evaluating the second prong."  United States v. Bravo, 350 F. Supp. 3d 16, 22 (D. Mass. 2018) (collecting cases).  Here, Henry's challenge is not to any guilty plea in this case, but to the admission of his now vacated prior state conviction as Rule 404(b) evidence at the trial in this case. Even assuming that the Ferrara framework applies in this context, Henry has not satisfied the second prong regarding materiality, particularly given that the assessment of whether this prong

has been satisfied "will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial." Bravo, 350 F. Supp. 3d at 22 (internal quotation marks and citation omitted) (reciting non-exhaustive Ferrara factors). This is true whether the focus is upon the underlying state conviction itself or the admission of same as Rule 404(b) evidence at the trial in this case.

As to the underlying conviction, first, there was overwhelming evidence that Henry possessed crack cocaine with the intent to distribute it. The substance, along with a large sum of cash and a personal paper with Henry's name on it, was seized from his pants and additional baggies of the substance (and a large rock of the substance) were recovered from the shorts that Henry was wearing. D. 148 at 56-57. The officers also recovered tools of the drug trade, including scales and baggies, from the residence where Henry was arrested and which was subject to a search pursuant to a search warrant. D. 186-4; see D. 148 at 56. Second, even considering that Ms. Dookhan was the chemist, she tested only three of the baggies seized from Henry. D. 186-5. The remaining baggies remained untouched and, when subsequently tested by another chemist, proved to be crack cocaine. D. 186-6; D. 186-7. Given these circumstances, it cannot be said that the 'newly discovered evidence' of Dookhan's conduct would have detracted from the factual basis for Henry's 2012 state court plea. Third, even if such misconduct could surely could have been used to undermine Dookhan's credibility at that trial, if she had been called as a witness, such could not be said to be outcome-determinative given the other evidence against Henry. See Castro, 272 F. Supp. 3d at 274 (observing that courts have rejected "petitions because circumstantial evidence of the identity of substances seized from defendants and tested by Dookhan was sufficient to sustain convictions despite the government's failure to disclose her misconduct"). Fourth, and not insignificantly, Henry does not assert factual innocence as to 2011 conduct that lead to his

2012 guilty plea. <u>Bravo</u>, 350 F. Supp. 3d at 23. For all of these reasons, even if the focus should be on the basis of his 2012 guilty plea itself in state court, Henry has failed to satisfy the second prong of the <u>Ferrara</u> analysis.

Since this case involved not Henry's guilty plea in state court, but the admission of same as Rule 404(b) evidence, even focusing on this evidentiary admission, Henry has failed to show that the result of his trial would have been different but for this ruling. For all of the reasons previously addressed by the First Circuit in his direct appeal, this evidence had special relevance as to the government's burden to prove Henry's intent, D. 154 at 13-15, and there was no error in admitting it for this purpose and if there was error in instructing the jury that they could consider such evidence also of modus operandi, it was harmless given that there was "ample evidence to support the verdict" and nothing "pointed to a finding of modus operandi as a pathway to a guilty verdict that was not far more likely to have been provided by a finding of intent." <u>Id.</u> at 15-16. Although reverberations of Dookhan's misconduct continue to affect many aspects of the criminal justice system, the outcome as to admission of the Rule 404(b) evidence at Henry's trial remains the same. Although the Court allowed admission of Henry's prior conviction at trial, the centerpiece of the government's evidence focused upon Henry's prior "bad act" of possession of crack cocaine with intent to distribute and the similarity of such conduct to possessory conduct in this case. It was this prior bad act, not the fact of the conviction, that remains admissible under Rule 404(b) even with the vacatur. Moreover, the arresting officer, testified about his observations and seizures from Henry and this Court does not conclude that Dookhan's misconduct could have be used to undermine his credibility in a manner that would have been outcome-determinative. This is particularly true given the weight of the other evidence of Henry's guilt as to the drug charge in this case, as discussed above.

Even putting aside the <u>Ferrara</u> analysis, even if the Court considers the 2017 vacating of his 2012 conviction as "newly discovered evidence" that warrants a new trial as Henry appears to be advocating, D. 196 at 7,[1] such basis is not cognizable under 2255 unless "'[a]t a minimum, petitioner would be required to meet the conventional criteria for obtaining a new trial on the ground of newly discovered evidence.'" <u>Moreno-Morales v. United States</u>, 334 F.3d 140, 149 (1st Cir. 2003) (quoting <u>Barrett v. United States</u>, 965 F.2d 1184, 1194 (1st Cir. 1992)).  To do so, Henry would have to show that "'(1) the newly discovered evidence was unknown or unavailable at the time of trial; (2) the defendant was duly diligent in trying to discover it; (3) the evidence was material; and (4) the evidence was such that it would probably result in an acquittal upon retrial.'" <u>Id.</u> (quoting <u>Awon v. United States</u>, 308 F.3d 133, 140 (1st Cir. 2002).  Even assuming *arguendo* that Henry could satisfy the first three prongs of this test, he has certainly failed to show that it would probably result in acquittal upon retrial given the weight of other evidence as to the drug charge as discussed above even as the Court has considered Henry's argument that the lack of admission of the prior conviction would have made his argument that the police planted the drug evidence on Henry more palatable to the jury.  D. 196 at 18.  Moreover, given this consideration about whether the outcome of the trial would have been different (which echoes the materiality prong of the <u>Ferrara</u> analysis), no evidentiary hearing is warranted here since Henry's claims as discussed above "are inadequate on their face" and there is no suggestion here that Henry could offer competent evidence as to this issue.  <u>Barrett</u>, 965 F.2d at 1195.

---

[1] Certainly, the vacating of Henry's 2012 conviction was newly discovered after the trial, but the disclosure of Dookhan's misconduct or that Henry was seeking to vacate his conviction was not as counsel noted same to the Court in consideration of the government's motion in limine to admit the Rule 404(b) evidence.  D. 148 at 7.

## C.    Vacated Conviction as to Sentencing

Lastly, in the Petition, Henry argues that the vacating of his prior state drug conviction warrants his resentencing.  Although the vacating of his 2012 conviction reduced his Criminal History score by one point, it did not change his Criminal History Category ("CHC"), which remains the same as CHC V.  D. 136 at 7.  As a result, Henry's advisory Guideline Sentencing Range ("GSR") of 41 to 51 months also remains the same.   At his sentencing, the Court calculated the applicable guidelines range as being 41 to 51 months and sentenced Henry to 51 months, the high end of the sentencing range, D. 136-1 at 7, even as the government was urging a sentence above the high end of the GSR.  Id.

Unlike Cuevas v. United States, 778 F.3d 267, 269 (1st Cir. 2015), in which the vacatur of the prior drug possession conviction materially impacted petitioner's guidelines calculation by reducing his criminal history category from IV to III and his sentencing range from 77-96 months to 63-78 months, such is not the case here.  Id.  It cannot be said that Henry is "a criminal defendant whose federal sentence was increased based on state convictions that have since been vacated for the reasons here" and such his claim does not warrant resentencing as the circumstances in Cuevas did.  Id. at 276; see Vizcaino v. United States, 981 F. Supp. 2d 104, 110 (D. Mass. 2013) (comparing defendant's position with other defendants who had motions for resentencing based on since-vacated conviction granted and distinguishing because defendant's sentence had not been increased due to since-vacated conviction); Skillman v. United States, 800 F. Supp. 2d 352, 353 (D. Mass. 2011) (concluding that "the recent vacatur of [defendant]'s state court conviction has no bearing on this Court's sentence and re-sentencing is unwarranted").  Henry urges the Court to look past the calculation of the GSR and conclude that the vacatur would have led to a lower sentence.  D. 196 at 20.  This Court does not agree that resentencing is warranted given the totality

of circumstances and the fact that Henry's CHC remains the same. The Court relied upon numerous factors in imposing a sentence of 51 months, a sentence within the still applicable GSR, including the circumstances of his crime in this case, the sequence and "progression of seriousness" of his criminal record, the disciplinary reports Henry had incurred while incarcerated and other factors under 18 U.S.C. 3553(a). D. 136-1 at 3-7. The balance of these factors, including his CHC, remain unchanged for the Court and, accordingly, resentencing is not warranted.

On these facts, the Court is unable to find any prejudice suffered by Henry from the inclusion of the since-vacated conviction in his sentencing calculations and therefore denies Ground 5 of the Petition.

## VI.     Conclusion and Certificate of Appealability

For the foregoing reasons, the Court DENIES Henry's habeas petition under 28 U.S.C. § 2255, D. 173.

A petitioner may receive a certificate of appealability only if he has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Such a showing is made when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court will give Henry until January 28, 2020 to file a memorandum if he desires to address the issue of whether a certificate of appealability is warranted as to any of the grounds of the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge